```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
JACK J. GRYNBERG, GRYNBERG         :
PRODUCTION                         :
CORPORATION (TEXAS), INC.,         :
GRYNBERG PRODUCTION CORPORATION    :
(COLORADO), INC., and PRICASPIAN   :
DEVELOPMENT CORPORATION (TEXAS)    :
                                   :
                  Plaintiffs,      :
                                   :
     v.                            :      OPINION
                                   :
                                   :      06 Civ. 6495 (RLC)
ENI S.p.A., f/k/a AGIP, an Italian :
Corporation                        :
                                   :
                  Defendant.       :
-----------------------------------X
```

APPEARANCES

Daniel L. Abrams
Law Offices of Daniel L. Abrams, PLLC
2 Penn Plaza
Suite 1910
New York, NY 10121

Michael S. Porter
2 Penn Plaza
Suite 1910
New York, NY 10121

Jennifer Lee Price
Fulbright & Jaworski, LLP(TX)
1301 McKinney
Suite 5100
Houston, TX 77010-3095

John Preston Bowman
Fulbright & Jaworski, LLP(TX)
1301 McKinney
Suite 5100
Houston, TX 77010-3095

ROBERT L. CARTER, District Judge

On August 28, 2006, Jack J. Grynberg ("Grynberg"), Grynberg Production Corporation (Texas), Inc., Grynberg Production Corporation (Colorado) ("GPC") and Priscaspian Development Corporation (Texas) filed a complaint against Eni S.p.A ("Eni" formerly known as "Agip"), a publicly owned Italian energy corporation and successor in interest by merger to Agip S.p.A.  Plaintiffs claim defendant was unjustly enriched through the use of Grynberg's confidential and proprietary information about the undeveloped Karachaganak Field ("Karachaganak"), an onshore oil field in northwestern Kazakhstan that had not been developed by the former Soviet Union and the global petroleum industry due to Soviet-era nuclear contamination.  Grynberg asserts that he provided British Gas ("BG") information about the undeveloped oil field, which BG then improperly used to create a partnership with defendant Eni, which enabled the BG and Eni to jointly outbid British Petroleum ("BP") with whom plaintiffs also had a contractual relationship concerning development of the oil field.  On February 20, 2007, Eni filed a motion for summary judgment pursuant to Rule 56, F.R. Civ. P. against plaintiffs.  Eni moves for summary judgment on the grounds that plaintiffs' claim for unjust enrichment is barred by the applicable statute of limitations and laches, in that plaintiffs unquestionably knew or should have known in the exercise of reasonable diligence of the nature of the injury and its cause as long as fourteen years ago, and no less than seven years ago.  Plaintiffs argue that the doctrine of equitable tolling precludes summary judgment at this stage of the proceedings and prevents their claim from being dismissed as untimely.

**BACKGROUND**

According to plaintiffs, Grynberg was the first westerner to analyze top secret Soviet seismic data regarding the Kazakh portion of the Caspian Sea and onshore Priscaspian Basin.  Complaint, dated August 28, 2006 ("Compl.") ¶15.  Grynberg claims he was the first westerner to appreciate the enormous value and potential of the Caspian Sea within Kazakhstan ("Kashagan") and the northwestern sector of the onshore Pricaspian Basin known as the Karachaganak Field. Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n") 4.  Grynberg alleges that he used his contacts within the Kazakh government and Soviet bureaucrats in Moscow to access scientific and technical data regarding nuclear contamination in Karachaganak. Compl. ¶¶ 26-28.  With the consent and authority of the Kazakh government, Grynberg communicated the substance of his findings to a select group of western oil companies. Id. ¶¶ 22-23.  In 1990, Grynberg reached similar agreements with BG as it had done with BP. Id. ¶ 31.  The August 14, 1990 alleged joint venture agreement between BG and plaintiffs, *inter alia*, provided plaintiffs with a twenty percent (20%) net profits interest in any successful oil and natural gas venture within the Area of Mutual Interest ("AMI"), covering a large region called the "Pricaspian Basin" within the northwestern portion of the onshore and offshore Republic of Kazakhstan, in which BG participated. Id.

In July 1992, the Republic of Kazakhstan awarded all rights to explore and develop Karachaganak jointly to BG and Eni. Id. ¶ 37.  Plaintiffs assert that in 1991, BG and Eni had a number of discussions regarding collaboration on Karachaganak that were

1

contrary to the express representations BG later made to Grynberg in the 1992/1993 timeframe. Pls.' Opp'n 6.  Grynberg claims that BG led him to believe that the Republic of Kazakhstan forced it to develop Karachaganak with Eni. Id.  Later in 1992, GPC filed a lawsuit against BG for breaching the agreement to share exploration and development opportunities within the AMI. Pls.' Opp'n 7.  According to Grynberg, the agreement covered the opportunity in Karachaganak, the benefits of which BG failed to share with GPC. Id.  GPC's case against BG settled in or around July of 1993.  Affidavit of Jack J. Grynberg, Apr. 9, 2007 ("Grynberg Aff.") ¶ 5.

Plaintiffs assert that in discussions with BG starting in late 1992 and continuing through July 1993 Grynberg repeatedly asked BG representatives to describe the circumstances in which Eni became involved as a fifty-percent (50%) joint venturer in the development of Karachaganak with BG.  Pls.' Opp'n 7.  BG personnel allegedly said that the Republic of Kazakhstan had directly and independently invited Eni and forced BG to take Eni as a partner. Grynberg Aff. ¶ 4.  Grynberg alleges that during settlement negotiations in 1993, he asked the then current managing director of BG, Dr. Michael Alexander, to see the agreement that BG had with Eni in Kazakstan. Id. ¶ 3.  Dr. Alexander allegedly refused the request claiming that the agreement was protected by a strict confidentiality agreement between the two companies. Id.  Grynberg claims that Dr. Alexander represented to him that Eni was put into Karachaganak deal by the Government of Kazakhstan and thus became a partner on a fifty-fifty (50/50) basis with BG who won the bid with a bonus of $500,000,000, beating BP, whose last bid had been $450,000,000. Id. ¶ 4.  According to Grynberg, Alexander told him that Eni independently agreed to put up additional funds into the venture pursuant to their own arrangement with the Republic of Kazakhstan. Id.  Grynberg claims that based on Dr. Alexander's word, he believed for the next fourteen (14) years that BG was forced to take Eni on as a joint venturer if it wanted to develop Karachaganak.  Id. ¶ 5.

On June 27, 2006, Grynberg claims he had lunch with Alan Levison, a vice president at BG until 1993. Id. ¶ 7.  After Grynberg advised Levison of his understanding that the Government of Kazakhstan forced BG to take Eni as a joint venturer, Levison told Grynberg that he believed BG brought Eni into the joint venture on their own. Id.  On Saturday, July 10, 2006, Grynberg met Mrs. Sharon Kallos, who was in charge of the ecological study and of the clean up at a nuclear spill disaster in Karachaganak. Id. ¶ 8.  Mrs. Kallos also allegedly told Grynberg that BG brought Eni in as a fifty-percent (50%) partner on their own volition. Id.  Grynberg filed a complaint in this matter on August 28, 2006.

On September 28, 2006, Grynberg met Mr. Enzo Viscusi, Group Senior Vice President of Eni. Id. ¶ 9.  Grynberg claims that he informed Mr. Viscusi that he settled his disputes with BG and that at the time of the settlement, BG represented to him that Eni was forced on BG as a partner by the Government of Kazakhstan. Id.  Mr. Viscussi informed Grynberg, in sum and substance, that BG sought Eni out as a joint venturer because either BG did not have the full $500,000,000 or did not want to spend that amount itself. Id.

2

**DISCUSSION**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.[2] The moving party must demonstrate that no genuine issue of fact exists for trial.[3]

**1. Choice of Law**

In diversity cases, "state statutes of limitations govern the timeliness of state law claims."[4] State law also determines the "commencement of the limitations period."[5] To determine which state's law applies, a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits.[6] Under N.Y. C.P.L.R. § 202, the claims of a plaintiff who is not a New York domiciliary are time-barred if they are untimely under the shorter of either New York's limitation period or the limitation period of the jurisdiction where the cause of action accrued.[7] "In borrowing the foreign statute, all extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the entire foreign statute of limitations ... applies, and not merely its period."[8] New York follows "the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury."[9] Because plaintiffs are listed as either residents or as a corporation with their principal place of business in Colorado, plaintiffs' alleged economic injury was sustained and the cause of action accrued in Colorado.[10]

The N.Y. C.P.L.R. does not specify a limitations period for unjust enrichment but the New York courts have held that such claims are governed by either a three-year statute of limitations when monetary relief is sought or a six-year statute of limitations when equitable relief is sought.[11] Therefore, in New York, the choice of the applicable statute of limitations depends on the substantive remedy which the plaintiff seeks. The relief sought in plaintiffs' complaint—restitution for monetary damages sufficient to fully compensate plaintiffs for their damages, losses and injuries, and punitive damages if

---

[1] Rule 56(c), F.R. Civ. P.
[2] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[3] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).
[4] Schermerhorn v. Metro. Transp. Auth., 156 F.3d 351, 354 (2d Cir. 1998) (citation omitted).
[5] Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002).
[6] Id. at 710 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).
[7] Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 611 (S.D.N.Y. 2006) (Mukasey, J.) (citing N.Y. C.P.L.R. § 202).
[8] Id. at 614 (citing In re Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 207 (1995) (internal quotation omitted)).
[9] Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999).
[10] See Cantor Fitzgerald, 313 F.3d at 710.
[11] Hughes, 419 F. Supp. 2d at 612; Lambert v. Sklar, 817 N.Y.S.2d 378, 380 (2d Dep't 2006); N.Y. C.P.L.R. §214(4).

3

available—is not equitable in nature. Thus, plaintiffs' claim would be governed by the three-year statute of limitations under New York law.

In Colorado, Plaintiffs' unjust enrichment claim is also subject to a three-year statute of limitations.[12] Plaintiffs contend that under Colorado law, a six-year statute of limitation applies in connection with Plaintiffs' unjust enrichment claim. According to Plaintiffs, their claim for unjust enrichment seeks to recover a determinable debt and Colo. Rev. Stat. § 13- 80-103.5(1)(a) mandates application of a six-year general limitation period. There is nothing in the August 14, 1990 alleged joint venture agreement that contains a specific method for determining amounts due to the parties to the agreement. Also, the damages recoverable for unjust enrichment are restitution damages. Plaintiffs' unjust enrichment claim does not seek to recover a determinable debt. Therefore, plaintiffs' unjust enrichment claim would be subject to a three-year statute of limitations under Colorado law. Since the two periods are the same, the court need not borrow the Colorado statute.[13] Thus, the court will simply apply New York law.

**2. Equitable Tolling**

Here, plaintiffs concede that Grynberg had "almost immediate awareness of the July 1992 joint venture between BG and Eni" but argue that it is "the deception concerning the formation of the joint venture that was only very recently discovered, and followed immediately with the subject law suit" that would render this suit timely. Pls.' Opp'n. 22. Plaintiffs filed their suit, August 28, 2006, fourteen years after Grynberg knew that BG and Eni had jointly acquired all rights to explore and develop Karachaganak. Compl. ¶ 37. However, plaintiffs contend that even if their claim is time-barred, they are entitled to equitable tolling on the grounds of fraudulent concealment.

In applying the foregoing limitations periods, the court is mindful that "a statute of limitations does not run against a plaintiff who is unaware of his cause of action."[14] New York law allows plaintiffs to benefit from equitable tolling where "some action on the [defendant's] part made it such that the [plaintiffs were] unaware that the cause of action existed."[15] Where a defendant's fraudulent concealment gives rise to equitable tolling, the statute of limitations is tolled until "the plaintiff either acquires actual knowledge of the facts that comprise his actions or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice."[16]

However, defendant argues that plaintiffs failed to properly raise the issue of equitable tolling on the grounds of fraudulent concealment in their pleadings, which must

---

[12] Luttgen v. Fischer, 107 P.3d 1152, 1157 (Colo. Ct. App. 2005) (citing Colo. Rev. Stat. § 13-80-101(1)(a)).
[13] See Walsh v. Maryland Bank, N.A., 806 F. Supp. 437, 445 (S.D.N.Y. 1992) (Haight, J.).
[14] Cerbone v. Int'l Ladies Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (internal quotation marks and citation omitted).
[15] Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 663 n.1 (S.D.N.Y. 2007) (Holwell, J.) (internal quotation marks and citation omitted).
[16] Cerbone, 768 F.2d at 48 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 461 (2d Cir. 1974)).

4

be pled with particularity as required by Rule 9(b), F.R. Civ. P.[17]  In the case of fraudulent concealment, Rule 9(b) requires the plaintiff specify in its pleadings "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."[18]

Here, plaintiffs allege that "[a]s early as 1992 or 1993, Grynberg was led to believe by BG representatives that Eni had been interjected into both Karachaganak and Kashagan by the government of Kazakhstan.  Grynberg did not know until very recently that BG had invited and convinced Eni to participate with it in both Karachaganak and Kashagan." Compl. ¶ 39.  The Complaint further states that "[i]n approximately early July of 2006, Jack J. Grynberg learned for the first time from former BG personnel in London, England that contrary to BG's prior representations, and Grynberg's assumptions, that Eni had been directly brought into Karachaganak and Kashagan by BG and not by the government of Kazakhstan.  In fact, Eni had directly and actively participated in the April 1992 competitive bid for Karachaganak and the June, 1993 bid for Kashagan at the invitation of BG." Id. ¶ 43.

Plaintiffs allege that BG failed to inform Grynberg that they sought Eni out to participate with it in both Karachaganak and Kashagan.  However, plaintiffs have failed to allege the person responsible for the failure to disclose the omission, the context of the omissions and the manner in which they misled him, and what defendant Eni obtained through the fraud.[19]  The court finds these allegations are insufficient to satisfy the pleading requirements of Rule 9(b).  However, the court grants plaintiffs leave to amend its allegations of fraud based on fraudulent concealment, to the extent plaintiffs are able to do so, so as to comply with the Rule 9(b) specificity requirements as set forth above.[20]

**3. Accrual of Unjust Enrichment Cause of Action**

Plaintiffs also raise the argument that their claim for unjust enrichment does not accrue until defendant has been enriched.  Under New York law, for plaintiffs to prevail on a claim of unjust enrichment, they must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."[21]  The statute of limitations for unjust enrichment generally

---

[17] Although this is a summary judgment motion, defendant raises issues about the sufficiency of plaintiffs' pleadings.  Rule 9(b), F.R. Civ. P. is typically invoked on motions to dismiss.  Despite the unusual procedural posture, the court will address defendant's contention that equitable tolling has not been properly raised.  See Def.'s Reply Pls.' Opp'n to Def.'s Mot. Summ. J. 13-14.

[18] Malmsteen v. Berdon, LLP, 477 F. Supp. 2d at 664 (internal quotation marks and citation omitted).

[19] See Adler v. Berg Harmon Assoc., 816 F. Supp. 919, 924 (S.D.N.Y. 1993) (Connor, J.)(dismissing complaint where it "failed to allege the substance and circumstances of the omission with sufficient particularity to give defendants fair notice of the claim").

[20] See Devaney v. Chester, 813 F.2d 566, 569 (2d Cir. 1987) (leave to replead should be granted to plaintiffs where plaintiffs had not been granted prior opportunity to replead fraud with sufficient particularity pursuant to Rule 9(b), F.R. Civ. P. and where plaintiffs had not had discovery of defendant).

[21] Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001).

begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution."[22] So, a cause of action for unjust enrichment does not accrue until defendant begins to pay itself.[23] At this time, the court is unable to make a determination on this issue. Discovery has not taken place in this case and plaintiffs need discovery in order to ascertain whether and to what extent defendant has received revenue, covered capital investment, costs and expenses, and/or made a profit in order to determine when plaintiffs' cause of action accrued.

Eni has failed to demonstrate that there is no genuine issue of material fact or that they are entitled to judgment as a matter of law. Accordingly, the court concludes that defendant is not entitled to summary judgment, at this time, on the grounds that plaintiffs' claim for unjust enrichment is untimely.

## CONCLUSION

Defendant's motion for summary judgment is DENIED without prejudice. In light of the aforementioned unresolved matters, the court directs the parties to conduct limited fact discovery on the issue of claim accrual for unjust enrichment. Discovery is limited to whether and to what extent defendant has received revenue, covered capital investment, costs and expenses, and/or made a profit in order to assist the court in determining whether or not plaintiffs' claim is timely. The parties will complete the limited fact discovery by Friday, November 2, 2007. At that time, if a dispositive motion is appropriate, it should be filed on or before Friday, November 16, 2007. Plaintiffs' response should be filed on or before Friday, November 30, 2007. Defendant's reply should be filed on or before Friday, December 7, 2007. Plaintiffs are given leave to amend their complaint consistent with Rule 9(b) to the extent amendment will cure the defect set forth herein. The amended complaint should be filed within thirty (30) days of this Order. Defendant is directed to file the amended answer to the amended complaint within ten (10) days of being served with the amended complaint.

**IT IS SO ORDERED.**

DATED: New York, New York
September 5, 2007

ROBERT L. CARTER
U.S.D.J.

---

[22] Id. at 520 (internal quotation marks and citation omitted).
[23] See id.

6