UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :

JACK J. GRYNBERG, GRYNBERG PRODUCTION
CORPORATION (TEXAS), INC.,
GRYNBERG PRODUCTION CORPORATION
(COLORADO), INC., and PRICASPIAN
DEVELOPMENT CORPORATION (TEXAS)

                          Plaintiffs,

         v.                                         **OPINION**

                                                       06 Civ. 6495 (RLC)

ENI S.p.A., f/k/a AGIP, an Italian
Corporation

                        Defendant.
------------------------------------------------------------X

APPEARANCES

Daniel L. Abrams
Law Offices of Daniel L. Abrams, PLLC
2 Penn Plaza Suite 1910
New York, NY 10121

Michael S. Porter
2 Penn Plaza Suite 1910
New York, NY 10121

Jennifer Lee Price
Fulbright & Jaworski, LLP(TX)
1301 McKinney Suite 5100
Houston, TX 77010-3095

John Preston Bowman
Fulbright & Jaworski, LLP (TX)
1301 McKinney Suite 5100
Houston, TX 77010-3095


ROBERT L. CARTER, District Judge

INTRODUCTION

On November 16, 2007, Defendant Eni S.p.A ("Eni") filed a motion for summary judgment against Plaintiffs Jack J. Grynberg, Grynberg Production Corporation (Texas), Inc., Grynberg Production Corporation (Colorado), Inc., and Pricaspian Development Corporation (Texas) (all together "Plaintiffs," or "Grynberg") on the grounds that Plaintiffs released Eni and the claim is barred by the statute of limitations. Plaintiffs cross move for summary judgment to strike any affirmative defense of the statute of limitations. Defendant's motion is granted in part and denied in part. Plaintiffs' motion is denied in its entirety.

BACKGROUND[1]

In 1991, Agip S.p.A (now known as Eni S.p.A ("Eni")) entered into a joint venture with British Gas p.l.c ("BG"). The joint venture sought the rights to explore, develop and produce the Karachaganak and Kashagan fields in the Republic of Kazakhstan.

In 1995, Eni, BG, the Republic of Kazakhstan, along with other parties, entered into a Production Sharing Principles Agreement with respect to the Karachaganak field (the "1995 Karachaganak PSPA"). The PSPA provided that Eni and BG would engage in remedial and maintenance operations in the Karachaganak field to enhance the recovery and production of petroleum from the Karachaganak field pending the negotiation and execution of a final production sharing agreement.

In December 1995, Agip Karachaganak B.V. ("AKBV"), a company wholly owned by Eni, purchased all the rights and obligations that Eni had in the 1995

---

[1] Court assumes familiarity with the lengthy facts of this case and only reiterates those which are pertinent to the motions for summary judgment.

Karachaganak PSPA and the Karachaganak field for US$106.1 million. This sales price represented Eni's cost incurred related to the Karachaganak field. AKBV began receiving revenues from the Karachaganak field in 1995.

In June 1993, Eni, British Petroleum Exploration Operating Company ("BP"), BG, Total Exploration and Production Kazakhstan, and the Republic of Kazakhstan executed a Preliminary Consortium Agreement with respect to the exploration and development of the Kashagan field. The final Consortium Agreement gave Eni, along with other signatories, the exclusive right to negotiate for a production of sharing agreement with respect to the Kashagan field.

In December 1995, Agip Caspian Sea B.V. ("Agip Caspian Sea"), which is wholly owned by Eni, purchased Eni's interest in the Consortium Agreement for US$29.5 million. This sales price represented Eni's costs related to the Kashagan field.

In 1992, Grynberg filed a lawsuit against BG for breaching an agreement to share exploration and development opportunities within the northwestern portion of the onshore and offshore Republic of Kazakhstan with Grynberg. In 1995, pursuant to a settlement agreement ("Settlement Agreement"), Grynberg released BG and its "affiliates" from all claims arising out of BG's activities in Kazakhstan.

## WAIVER OF AFFIRMATIVE DEFENSE

The court begins its analysis of the Parties' cross motion for summary judgment with the threshold question of whether Defendant may assert a statute of limitations defense against Plaintiffs' claim of unjust enrichment.

In Defendant's Answer to Plaintiffs' Original Complaint, Defendant asserted a statute of limitations defense against Plaintiffs' claim of unjust enrichment. Defendant

then moved for summary judgment on numerous grounds, including statute of limitations, and Plaintiffs subsequently moved to amend their complaint. The court determined that further discovery was necessary to determine whether Plaintiffs' claim was outside the statute of limitations and also granted Plaintiffs' motion to amend their complaint. Grynberg et al. v. Eni S.p.A., 06 Civ. 6495 (RLC), 2007 WL 2584727, at *6 (S.D.N.Y. Sept. 5, 2007). The court ordered that discovery be limited to the alleged gains Defendant acquired in relation to Plaintiffs' unjust enrichment claim. Id. In response to Plaintiffs' First Amended Complaint, Defendant filed an Answer to Amended Complaint ("Amended Answer") which did not assert statute of limitations as a defense. (See Answer to Am. Compl.)

Plaintiffs now assert that Defendant has waived its right to assert a statute of limitations defense by failing to plead it in its Amended Answer, as required by Federal Rules of Civil Procedure 8(c) ("Fed. R. Civ. P."). (Pls.' Br. Opp'n Mot. Summ. J. 17.) Fed. R. Civ. P. 8(c) requires an answering party to "set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Failure to comply with the requirements of Rule 8(c) may result in waiver of affirmative defenses.

Defendant argues that its affirmative defense should not be deemed waived because Plaintiffs cannot demonstrate prejudice. (Def.'s Mot. Summ. J. 3.); see, e.g., Steinberg v. Columbia Pictures Indus., Inc., 663 F.Supp. 706, 715 (S.D.N.Y. 1987) ("[A]bsent prejudice to the Plaintiff, a Defendant may use an affirmative defense in a motion for summary judgment for the first time.") (quoting Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984)). Moreover, Defendant argues that it implicitly raised the statute

4

of limitations defense by reference in its Amended Answer to cases which address statute of limitations defenses. (Def.'s Mot. Summ. J. 2.)

Plaintiffs have not alleged prejudice by Defendant's failure to properly plead a statute of limitations defense. (See Pls.' Br. Opp'n Mot. Summ. J. 17-18.); U.S. v. Krieger, 773 F.Supp. 580, 583 (S.D.N.Y. 1991) (Carter, J.). Plaintiffs have had an adequate opportunity to respond to this challenge and have fully briefed the issue. Krieger, 773 F.Supp. at 583; see also Astor Holdings, Inc. v. Roski, 325 F.Supp.2d 251, 260-61 (S.D.N.Y. 2003). Further, because discovery was limited to determining whether the Plaintiffs' claim was outside the statute of limitations, the court finds it unlikely that Plaintiffs were surprised by Defendant's reliance on this affirmative defense.

Because Plaintiffs have had an opportunity to respond, and have in fact responded, to Defendant's assertion of a statute of limitations defense, and in the interest of avoiding further delay in the adjudication of this case, the court will consider Defendant's motion on the merits.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat summary judgment, the non-moving party must present significantly probative evidence demonstrating that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

---

[2] The court thereby construes Defendant's motion for summary judgment as one to amend their First Amended Answer, and grants said motion in the interest of justice. Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 283 (2d Cir. 2000).

5

## STATUTE OF LIMITATIONS

To state a claim for unjust enrichment under New York law, Plaintiffs must prove (1) Eni obtained a benefit (2) that was acquired at Plaintiffs' expense, which (3) in equity and good conscience should be restored.  See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).   The three-year statue of limitations for a claim of unjust enrichment begins to run "upon an occurrence of the wrongful act giving rise to a duty of restitution." Golden Pacific Bancorp v. Fed. Deposit Ins. Corp., 273 F.3d 509, 520 (2d Cir. 2001) (internal citations and quotation marks omitted).  The parties dispute the accrual of Plaintiffs' unjust enrichment claim.

When Defendant filed its previous motion for summary judgment, it was unclear whether Defendant had obtained a benefit that should be restored to Plaintiffs.  The court ordered discovery into whether and to what extent Defendant had received revenues, or covered capital investment, costs and expenses, *and/or* made a profit in order to determine when Plaintiffs' cause of action accrued.  Grynberg et al., 06 Civ. 6495 (RLC), 2007 WL 2584727, at *5.

From discovery, the parties uncovered the financial gains and losses of Eni in regards to the Karachaganak and Kashagan field.  In 1995, AKBV purchased all the rights and obligations that Eni had in the 1995 Karachaganak PSPA and the Karachaganak field for US$106.1 million.  In 1997, AKBV sold approximately 25% of its interest in the 1995 Karachaganak PSPA and Karachaganak field to Texaco for a US$69.519 net gain.  The revenues received by AKBV from the sale of petroleum from the Karachaganak field by year are: US$2.5 million in 1995, US$46.6 million in 1996, US$32 million in 1997, US$20 million in 1998, US$46 million in 1999, US$123 million

in 2000, US$96.9 million in 2001, US$110 million in 2002, and US$143 million in 2003. (Def.'s Mot. Summ. J. 12.)

Defendant now argues that the court should grant its motion for summary judgment because the statute of limitations began to run when Eni used Grynberg's information and contacts with the Kazakhstan government in 1992 and 1993 to gain valuable rights related to the Karachaganak and Kashagan petroleum fields in Kazakhstan.  From those rights, they argue, Eni received over $600 million in revenues from 1995 through 2003, through its subsidiary, AKBV. (Def.'s Mot. Summ. J. 12.)

Plaintiffs bring a cross motion to strike Defendant's affirmative defense. Plaintiffs argue that the statute of limitations did not begin to run until Eni began to receive a *profit* from the petroleum fields in Kazakhstan and therefore their claim was brought within the three year statute of limitations.

*a) Payment as a Benefit*

As stated in the court's prior decision, the Defendant was unjustly enriched when it began to pay itself as a result of the appropriation of Grynberg's valuable confidential information. Grynberg et al., 06 Civ. 6495, 2007 WL 2584727, at *5. At that point, the statute of limitations for Plaintiffs' claim of unjust enrichment began to accrue.

Grynberg's argument, which rests on profits from production, essentially states that Eni does not unjustly retain a benefit owed to Plaintiffs until Eni (1) recoups its investments, costs and expenses, (2) generates a net profit for Eni, and (3) refuses to return this benefit out of "equity and good conscience."  This narrow argument would be proper if Grynberg were suing for breach of contract or a claim of money had and received. See Onanuga v. Pfizer, 369 F.Supp. 2d 491, 498 (S.D.N.Y. 2005) (McMahon,

7

J.).  If it were, one could say that Eni did not owe a duty of performance until it started earning profits from production.  See Grynberg v. Total S.A., et al., 538 F.3d 1336, 1352 (10th Cir. 2008).  However, Grynberg's complaint alleges unjust enrichment and any benefit to Eni is what matters, not the breach to pay Plaintiffs, which is not the basis of the claim.  Id.

Here, the court finds that Defendant paid itself when it began receiving revenue from oil and gas allegedly obtained through Plaintiffs' confidential information. Plaintiffs are mistaken in their narrow interpretation of payment.  The term "payment" is defined as "money or other valuable thing so delivered." BLACK'S LAW DICTIONARY at 1165 (Thompson West 8th ed.).  For purposes of unjust enrichment, "payment" is not narrowly defined as "net profits interest," as Plaintiffs argue.  (Am. Compl. ¶ 61.); see, e.g., U.S. East Telecomm., Inc. v. U.S. West Commc'n Servs., Inc., 38 F.3d 1289, 1299, n. 2 (2d Cir. 1994).

Plaintiffs' reliance of "payment" requiring "net profits interest" is rooted in their misinterpretation of Golden Pacific Bancorp, 273 F.3d 509.  Golden Pacific Bancorp involved the FDIC paying itself post-insolvency interest to which it believed itself entitled.  The Second Circuit determined that the "wrongful act giving rise to restitution here was the FDIC's payment of interest to itself." Id. at 520.  The decision was based on the particularity of the facts of the case and was not a blanket ruling of when restitution is due, which Plaintiffs overlook.  The unjust enrichment inquiry focuses on the human setting involved and not merely on the transaction in isolation.  See Mayer v. Bishop, 551 N.Y.S.2d 673, 675 (3d Dept. 1990) (internal citation and quotation marks omitted).  In Golden Pacific Bancorp, 273 F.3d at 512, the FDIC placed the Bank into receivership and

8

proceeded to liquidate assets of the failed Bank and pay the Bank's depositors. Because of its receivership capacity, the FDIC had not been enriched or possessed any of Bancorp's "money or property" that "equity or good conscience" would require it to return until it paid interest to itself. Id. at 512. Conversely, the receipt of revenues, without profits, by Defendant constitutes unjust enrichment since there was no relationship between the Parties that would allow for Defendant's receipt of monies from the misappropriation of Grynberg's confidential information and contacts.[3]

   b) *Imputation of a Benefit*

Eni's receipt of any revenues from the misappropriation of Grynberg's information is sufficient for a claim of unjust enrichment. However, another issue arises – whether AKBV's revenues can be imputed as a benefit to Eni, the parent company. As stated prior, AKBV began receiving revenues from the Karachaganak field in 1995, receiving over US$600 million between 1995 and 2003, which was reflected in Eni's financial report.

Plaintiffs argue that in unjust enrichment claims the revenues which benefit the subsidiary simply do not benefit the parent. Conversely, Defendant argues that a subsidiary's revenue is attributable to the parent company in this case. It relies on accounting principals which require Eni's consolidated financial statements to include revenues and profits received by AKBV.

---

[3] Moreover, Plaintiffs argue that uncertainty existed from 1992 through 2006 as to whether Eni would realize a net profit from the Karachaganak Field and therefore, a claim of unjust enrichment could not be brought until after that time of speculation – 14 years. Plaintiffs' analysis goes against the purpose of the statute of limitations which includes protecting defendants by preventing surprises through the revival of "claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Meyer v. Frank, 550 F.2d 726, 730 (2d Cir. 1977).

9

We are inclined to agree with the Defendant in this context. Eni received a benefit when its subsidiary, AKBV, received revenues from the Karachaganak field, though no profit was obtained. The operations of AKBV, including its revenues and losses, are included in one set of consolidated financial statements with Eni, as though the parent and subsidiary operated as a single entity. In re Intelligroup Sec. Litigation, 468 F.Supp.2d 670, 698 (D.N.J. 2006).

The consolidated financials are part of the total mix of imputing subsidiary revenue to the parent company. Since 1995, Eni consolidated financial statements have included the financial information of AKBV, reflecting an increase of over US$600 million in cash flow. Therefore, whatever came to AKBV came into the coffers of Eni.

Furthermore, the court sees no reason why the revenue received by Eni directly from AKBV's purchase of all the rights and obligations possessed by Eni in the 1995 Karachaganak PSPA cannot satisfy the requirement for paying itself. A person may be liable for unjust enrichment even though the benefit received as a result of unjust enrichment did not allow that person to turn a profit. See U.S. East Telecomm., 38 F.3d at n.2. Though Eni did not receive a profit from that sale, it was advantageous for it to sell the rights it unjustly obtained and decrease its losses while still maintaining the ability, as sole shareholder in the subsidiary, to become enriched in the future. See Blue Cross of Cent. N.Y., Inc. v. Wheeler, 93 A.D.2d 995, 996 (4th Dept. 1983).

Because Eni and its affiliates received revenues, which constitute a benefit, before the end of 2003, the statute of limitation expired before this claim was brought in 2006.

<u>FRAUDULENT CONCEALMENT</u>

Although Plaintiffs brought their unjust enrichment claim outside the statute of limitations, the claim may proceed if the statute of limitations was tolled due to fraudulent concealment.

The Defendant must carry a heavy burden before the court will dismiss Plaintiffs' fraudulent concealment allegation without trial.  <u>Buccino v. Cont'l Assurance Co., et al.</u>, 578 F.Supp. 1518, 1523 (S.D.N.Y. 1983) (Carter, J.).  Defendant must show that "even when all ambiguities in the evidence are resolved, and all inferences are drawn in favor of [P]laintiffs, there are no material issues genuinely in dispute."  <u>Id</u>. (citing <u>Schering Corp. v. Home Ins. Co.</u>, 712 F.2d 4 (2d Cir. 1983)).  "Plaintiffs cannot rest their opposition to [Defendant's] motion on mere conclusory allegations," <u>id.</u>, "but neither do they need to prove their case to defeat the motion."  <u>Id</u>.  "The court will not resolve issues of fact on this summary judgment motion, but only determine if such issues exist."  <u>Id</u>. (citing <u>U.S. v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine & Honored Donor</u>," 691 F.2d 603, 606 (2d Cir. 1982)).

"The courts have been especially reluctant to grant summary judgment when questions of fraud and its discovery have been at issue," and even more so when a "multi-party fraudulent scheme has been alleged."  <u>Buccino</u>, 578 F.Supp. at 1523.  The question of Defendant and BG's intent, Plaintiffs' reasonable reliance, knowledge of material facts and diligence in discovering them do not readily lend themselves to summary disposition.  <u>Id</u>. at 1523-24.

*a) Intent of Misrepresentation*

Plaintiffs allege the unjust enrichment claim against Eni was unknown to them because of BG's misrepresentation. BG represented to Grynberg that the Republic of Kazakhstan forced BG to accept Eni as a joint venturer in the Karachaganak Field and that Eni had not seen any of Grynberg's confidential information prior to the formation of the BG/Eni joint venture. The essence of Plaintiffs' fraudulent concealment allegations is that "BG deliberately lied to Grynberg for the specific purpose of protecting ENI and the BG/ENI Joint Venture from being sued." (Pls. Br. Opp. Mot. Summ. J. 29). Because of "Grynberg's assumptions" (Comp. ¶ 39) and reliance of BG representatives, Plaintiffs made no further effort to discover the truth of the BG/Eni joint venture until July 2006.

Defendant argues that because "Eni is not alleged to have committed any fraudulent concealment and because BG's misrepresentations may not be used as a basis for tolling the statute of limitations against Eni, the statute of limitations should not be tolled." (Def.'s Mot. Summ. J. 22). Eni argues that BG's fraudulent concealment cannot be imputed to Eni because the alleged fraud was outside the ordinary course of the joint venture between BG and Eni. Furthermore, they argue that it is implausible that BG's statements were intended to benefit Eni and the BG/Eni joint venture "because Eni and the joint venture were immune from suit by the Foreign Sovereign Immunities Act ("FSIA")." (Def.'s Reply Mot. Summ. J. 16.)

BG's intent and whether the misrepresentation was in furtherance of a legitimate BG/Eni business goal are material facts in dispute. See Arias v. Mutual Cent. Alarm Servs., Inc., 182 F.R.D. 407, 416 (S.D.N.Y. 1998). Since the nature of the ordinary course of BG/Eni business is in dispute, it can hardly be said that Defendant has

12

demonstrated an absence of a disputed evidentiary issue as to the act of concealment. By itself, BG's intentions are not material to tolling the statute of limitations against Eni. However, if the misrepresentation was made in the ordinary course BG/Eni business, and the purpose of BG's misrepresentations were to protect the joint venture from suit, then this is a material fact, not be determined through summary judgment.

>  *b) Discovery of the Fraud*

Plaintiffs assert that they relied on the express representations of the BG representatives and that they "had no way to further investigate the circumstances of the formation of the BG/ENI joint venture, since the document that may have revealed what Grynberg now knows to be the truth were covered by strict confidentiality agreements between BG and AGIP/ENI." (Pls. Opp. Mot. Summ. J. 36).

Defendant asserts that Plaintiffs fail to identify any fraudulent statements that prevented Grynberg from discovering that the purported knowledge and political contacts given to BG were imputed to Eni because of the joint venture. They argue that none of the purported misrepresentations concealed Eni's knowledge or use of Grynberg's information. Moreover, Defendant argues that because in 1992, Plaintiffs lawsuit alleged that they were entitled to 100 percent of the rights (including Eni's and the joint venturer's rights) in the Karachaganak field that were awarded by Kazakhstan, they must have had knowledge of the fraud at least in 1992. (Def.'s Reply Mot. Summ. J. 18).

The mixed question of law and fact as to whether Grynberg exercised due diligence in ferreting out the nature of the joint venture is not susceptible to determination solely as a matter of law on this record. The inherent difficulty of determining who knew or should have know what when, and what each individual should have concluded from

13

what he knew or should have known, precludes the court from determining when the Plaintiffs discovered the fraudulent concealment.

Although courts have granted summary judgment on these issues when the facts were particularly clear and unambiguous, at this point in which discovery has been limited to the Eni's gains, the facts are simply not that clear. Buccino, 578 F.Supp. at 1525.

In sum, although Defendant has introduced a considerable body of evidence which indicates that Plaintiffs may well be unable to prove fraudulent concealment or that, on the other hand, Defendant will be able to prove Plaintiffs' awareness of the fraud prior to July 2006, Defendant has not shown that there are no material factual disputes warranting trial. Summary judgment is therefore precluded and the question of Plaintiffs' entitlement to the tolling of the statute of limitations proceeds.

## RELEASE

Under New York law, a release must be construed in accordance with the intent of the parties who executed it. Stone v. Nat'l Bank & Trust Co., 591 N.Y.S.2d 609, 611 (3d Dept 1992). An effective release requires an "explicit, unequivocal statement of a present promise to release defendant from liability." Bank of Am. Nat. Trust & Sav. Ass'n v. Gillaizeau, 766 F.2d 709, 713 (2d Cir. 1985) (internal quotation marks omitted).

Defendant argues that summary judgment should be granted because Grynberg released Eni from liability. Defendant claims that when Grynberg released BG in 1995, the Eni/BG joint venture was also released as an "affiliate" of BG. Furthermore, Defendant argues that because Grynberg's claim against Eni is derivative of BG's

14

purported wrongful use of Grynberg's information and contacts, the release of BG is also a direct release of Eni.

Plaintiffs argue that Eni is not sued derivatively, as their claim against BG, as well as the facts, substantially differed from the claim brought against Defendant. Furthermore, Plaintiffs argue that their release of BG and its affiliates did not cover Eni. They claim the parties did not intend to make Eni a third party beneficiary of the Settlement Agreement.

The Settlement Agreement between Grynberg and BG stated in relevant part: "BG [has] agreed to settle all causes of action asserted or which could be asserted by …[Grynberg], …against…[BG] or any of BG's subsidiaries, affiliates or employees…" (Def.'s Mot. Summ. J. 19.)  "Affiliate" is defined as "any person controlling, controlled by or under common control with such Person, with the concept of control in such context meaning the possession, directly or indirectly, of the power to control the management and policy of another."  (Id.)  "Person" is defined as "any individual…or any private or governmental enterprise, corporation, association, partnership, trust, estate or other entity or organization."  (Id.)

The contractual language is ambiguous, it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  Golden Pacific Bancorp, 273 F.3d at 516 (internal quotation marks omitted).  Here, one could reasonably interpret the contract differently as to whether the Eni/BG joint venture was covered or contemplated by the release.  The court sees no mention of the Eni/BG joint venture in the Settlement Agreement and it is unclear whether the release intended to include the venture as an

15

affiliate. Moreover, a question remains as to whether the release intended Eni as a third party beneficiary of the Settlement Agreement.

Since the contractual language is ambiguous and differing interpretations of the contract present a triable issue of fact, summary judgment is inappropriate.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in part and denied in part. Plaintiffs' motion is denied in its entirety.

**IT IS SO ORDERED.**

DATED: New York, New York
August 13, 2009

*[signature]*
**ROBERT L. CARTER**
**U.S.D.J.**